Michael Klinkhammer, Esq.
Klinkhammer Law Offices
P.O. Box 9137
Kalispell Montana 59901
Telephone: (406) 257-7277
Facsimile (888) 414-1015
Email: mklinkhammer@montanadsl.net
#2516

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| ROSE MARIE BUTTERFLY and JOY LYNN VALLES<br><br>    Plaintiffs,<br><br>v.<br><br>BENEFIS HEALTH SYSTEM, KATHIE AVIS, PAMELA BLACKWELL, CASEY BUCKINGHAM, LISA WATSON-WHITFORD<br><br>    Defendants. | **CV-18-96-GF-BMM-JTJ**<br><br>**THIRD AMENDED COMPLAINT AND DEMAD FOR JURY TRIAL** |

The Plaintiff, for her Complaint, states the following:

1

## STATEMENT OF FACTS

1. Plaintiff 1, Rose Marie Butterfly (Rose), now a 67-year-old, Native American woman, an enrolled member of the Blackfeet Tribe located in Browning, MT.currently resides in Great Falls, MT. That is where she resided when she was employed by the Defendant, Benefis.

2. Plaintiff 2, Joy Lynn Valles (Joy), a 65-year-old, Native American women, an enrolled member of the Blackfeet Tribe located in Browning, MT. Joy lives in Great Falls, MT and that is where she was residing when she was employed by the defendant, Benefis.

3. This lawsuit has a long history, beginning with the incidents of the case (2009-2016) that caused the lawsuit. Factors giving rise to the case are found in the investigation of the Occupational Safety and Health Administration (OSHA) (3/2016-4/2016); the Independent Contractor Central Unit (ICCU) (2015-2016); the Human Rights Bureau (HRB), and the Equal Employment Opportunities Commission (EEOC) (11/2016-2018) and finally with the lawsuit itself.

4. Rose, a Blackfeet Native American, was a career employee with over five ½ years of paid service and around 7 months of unpaid service with Benefis until Benefis discriminatorily terminated her employment on 2/6/2016.

5. Joy, a Blackfeet Native American, was a career employee with 5 years and 4 months of service with Benefis discriminatorily terminated her employment on 3/5/2015.Joy now joins Rose's existing lawsuit as a plaintiff who was also affected by some of the same and or similar racial discrimination, on-going harassment and retaliatory acts.

6. The plaintiff's manager/supervisor was Kathie Avis (Kathie), a white female, who was the Chief Administrative Officer or "agent of Benefis.

7. During 2009-2015, Kathie, CEO, developed and implemented the Benefis independent contractor (IC) contract system.

8. Around 2009-2015, Kathie targeted Native Americans, mostly Blackfeet, to hire as IC's. Kathie's contracts for the IC's were discriminatory because she and Lisa Watson-Whitford (Lisa) immediately began using them as employees. Benefis, through its agents, Kathie and Lisa discriminated against me, Joy and other Blackfeet American Indians by continued using ID contracts of 1-6 month increments for a period of approximately 6 years.

9. Benefis, by and through Kathie's employment practices constituted intentional racial discrimination as the intent and effect was to segregate myself, Joy, and other Blackfeet American Indians into lower paying positions.

10. By the above described behavior, Benefit, through its agents, discriminatorily misclassifying employee's such as me and Joy as independent contractors discriminatorily denied us employee pay and benefits and denied us state and federal government employer tax payments such as FICA. taxes that are normally paid on behalf of employees.

11. Fall of 2009, Joy was hired as an IC and was assigned to the Native American Welcome Center (NAWC).

12. 11/28/2009, Rose was hired as an IC and was assigned to be a cancer survey worker and to be Joy's replacement on her day's off.

3

13. Other workers hired by the Native American Programs (NAP) previously were Cree and white and were immediately hired as employees.

14. On January 18, 2010, Rose applied for the Native American Advocate position and got the job. At that point, she was now considered an employee of Benefis. Rose remained an employee until Benefis discriminatorily terminated on February 6, 2016. Rose did not receive proper training. She learned on-the-job.

15. During the years 2010 through 2012, a couple times, I asked Kathie if the ICs could be hired as regular employees and she said that she didn't have enough in her budget.

16. In 2012, Donald Fish (Donald) was hired as an IC, as the Native American Cultural Advisor in the NAWC. Joy advised me and Kathie about his known previously anger issues. Donald began harassing the myself and Joy by ignoring us and looking mean at us. In his first week of employment, Donald aligned himself with Kathie and Lisa.

17. In 2014, Donald assaulted Joy by grabbing her shoulder and squeezing them hard enough to make her exclaim "Oww" in pain; She said, "Don't grab me". Kathie and Lisa just ignored her..

18. Benefis, through their agent, Kathie, treated the Joy and I differently from similarly situated employees. We both overheard Kathy, Lisa and other co-workers referring to us and the Blackfeet American Indians with racial slurs.

19. Lisa, a Cree Native American, was Kathie's co-worker and right-hand, go to person. Kathie favored Lisa and that relationship added to the hostile work environment and racial slurs against Joy, me, and the Blackfeet.

20. Around the fall of 2012, during a staff meeting in the Native American Welcoming Center (NAWC). Lisa said, "There are too many Blackfeet working here!" Joy told Kathie, "Hey that's discrimination!" Kathie said, "Yes, it is.".

21. That statement put in perspective the discriminatory animosity we had been experiencing from Benefis, Kathie and Lisa. The statement of known discrimination explained their actions and decisions against us that created and fostered the hostile discriminatory work environment.

22. In 2010, Lisa said the same racial statement at another staff meeting in addition to saying that there should be more Cree's working there.

23. From her employment as an IC to her discriminatory termination, Rose was harassed, discriminated, and retaliated against, causing her work-related mental distress, anxiety attacks, panic attacks, PTSD type symptoms, chronic physical pain in the form of body pains and migraines, as diagnosed by her doctor, psychiatrists, and therapists.

24. In 2014, Benefis tried to fire Rose for using too much FMLA approved sick leave for my work-related illness. Lisa went into the NAWC to tell Joy when it was happening.

25. In 2014 and 2015, Rose's co-workers had her under surveillance and would tell her boss that she was not at work because they could not reach me on my phone to make me look bad.

26. Even though other non-American Blackfeet Indians arrived late and left early on a regular basis, Benefis always was singled out Rose for the smallest transgression.

27. From 2013 through 2105, Rose and Joy experienced mean looks, yelling, ignoring, lying, silent treatment, and rude statements about their appearance. The Benefis perpetrators were primarily Lisa and Kathie.

28. Discriminatory conduct toward Joy included being required to clock in and out for lunch, as well as arriving and leaving work, while her co-workers were not required to.

29. On September 18, 2914, Workplace Violence Incident occurred: Donald came into the NAWC and a Benefis patient, Nathan No Runner said, "Hi, Mr. No Runner". Donald slammed his books down and ran toward Nathan, assaulting him by choking him. Rose, Joy and 2 other patients witnessed the assault. Following Benefis policies and procedures, Rose, Joy and the 2 patients wrote complaints to Kathie and Lisa. The complaints were ignored and no investigation done. Kathie only talked to Donald. Kathie told Rose she fired Donald as a result, but that was a month later. Rose wasn't sure if that really happened, because at a secretly set-up meeting a month later Joy and Rose were told Donald was re-hired.

30. When Donald was hired, the plaintiffs expressed their fear for their safety and for the safety of patients and visitors to NAWC.

31. Kathie told me to stop writing about or talking about our harassment and discrimination or hostile work environment and encouraging others to complain

32. Rose was portrayed as the one at fault. As a result, Rose began to receive poor and unwarranted evaluations from Kathie. implying that Rose was the one causing all the trouble.

33. Kathie and Lisa isolated Rose and Joy from their co-workers by not including them

6

in decisions they were previously included in.

34. From March 2, 2015 through March 6, 2015, Kathie and Lisa terrorized Joy all week while Joy was out on approved sick leave, through numerous texts, calls and emails.

35. On March 6, /2015, Lisa forced Joy to come in to get Joy's file of statistics for the Native American Board meeting.

36. The plaintiffs were required to record statistics, Lisa lied to Kathie so she and Donald got out of having to doing statistics.

37. Lisa forced Joy to stay working while Lisa went to the meeting. Lisa was freaking out over meal tickets too, which she harassed the cafeteria people to make for her. After the meeting, Lisa and Kathie went to the NAWC and discriminatorily fired Joy.

38. When I went to pick up Joy, I asked Kathie why she fired Joy, Kathie said because Joy did not want to work with Donald. Kathie then said angrily, "Rose, I will see "YOU on Monday!".

39. Joy's discriminatory firing pushed me over the edge emotionally, I knew I was going to be fired because I to had used my worker rights to oppose having to work with Donald for safety reasons.

40. On March 9, /2015, I went on approved intermittent FMLA sick leave. I delivered a doctor's slip to Kathie, excusing me from work for 4 months for me to be treated for my work-related mental and physical illnesses. Two weeks later I was in the hospital for a suicide attempt.

41. On March 9, /2015, Joy delivered a grievance concerning her firing and harassment complaints against Kathie, Lisa and Donald for on-going harassment,

hostile work environment, and racial discrimination to Casey Buckingham (Casey)in HR.

42. On March 9, 2015, Rose delivered a complaint supporting Joy's complaint, it was a harassment-grievance report concerning Kathie's, Pam's, Lisa's and Donald's on-going harassment, racial/disability discrimination, hostile work environment and about letting Donald assault a Benefis patient with no punishment.

43. Casey told Rose to put it on an official harassment form before she could look at it and that no one would see it.

44. Rose began getting emotional again and was crying mad because Casey was another person that was not going to help her and was not going to investigate her complaints. At that point, Casey was trying to brush me off and get me out of her office as fast as she could, that was how Kathie and Pamela Blackwell (Pam) had treated me, discriminating against my disability.

45. The next time I saw the report it was attached as an exhibit to my OSHA and EEOC complaints. Casey told OSHA and the EEOC that I never did turn in a harassment report.

46. On March 9, 2015 went out on intermittent FMLA with doctor's slip for 4 month's approved sick leave.

47. On April 3/ 2015, Pam's email to Rose explaining leave deadlines, also had note about long-term disability. Rose had applied for long-term disability benefits but was told HR had to do it. Rose informed Pam, Pam kept delaying getting paperwork to long-term disability carrier, Rose turned in doctor paperwork to Pam as requested, Rose never got her long-term disability.

8

48. On July10, 2015, with doctor slip clearing me to return to work, my full-time job was not held for Rose, and Rose was not offered a replacement job. Rose suffered work-related illnesses that substantially impaired major life activities. Despite these challenges, Rose would have had no problem fulfilling the duties and responsibilities of her job with a reasonable accommodation. Rose told Kathie and Pam that she really needed her job because she had no money, Rose was told she could apply for a job at Benefis. Rose was left on as a registry employee until her termination on 2/6/2016.

49. After Joy was fired, she turned Benefis NAP into the ICCU, a division of the Department of Labor in Helena, MT, because Kathie owed her money from her IC contract.

50. On March 22, 2016 , the ICCU investigation findings sent to Benefis NAP, proved that the IC's we're not IC's per state or federal rules, only by their relationship with Benefis. IC contracts were fraudulent. Benefis did not respond to the ICCU in the 14 days they were allowed, so the findings were final.

51. On November 27, 2015, In November, Pam called me and asked if I still wanted to continue being on registry? I told her I would have to think about it and would let her know. On November 30, 2015, I answered Pam by email and told her I would continue in my registry position. I told her I was hesitant at first, because my safety and health concerns and my complaints were never resolved which contributed to my mental illnesses in the first place. Once again, Pam didn't acknowledge these complaints in my email. She told me she would talk to Kathie and get back with me. Pam told me that she talked to Kathie and Kathie wanted her to forward my email

and she would get back to me regarding when I was available to come in to work a shift(s). Rose was glad at the thought of getting shift(s) to make some money. Rose waited for Kathie's call or email to let her know when she could come in to work.

52. On February 6,2016, the response to Rose's email was to send Rose a termination letter. Kathie ignored the complaints in my email as well. Her pretext for her retaliatory wrongful discharge was that a registry worker was no longer needed. Kathie retired soon after that.

53. The plaintiffs protected activity and the defendants racial/disability discrimination, on-going harassment and retaliation were the main motivating factors behind Rose and Joy's wrongful terminations.

54. The defendants caused the plaintiffs to lose their jobs, leaving the plaintiffs in financial ruin. Joy became homeless and had a stroke shortly after being fired, Rose has a debilitating permanent disability and they were both forced into getting Social Security disability early at age 62, so their benefits are about half of what they would have gotten had they applied at full retirement age

55. On March 6, 2016, Rose filed a complaint with OSHA concerning the workplace violence incident, a safety issue, harassment, a hostile work environment and retaliation. Benefis did not do an investigation and a position statement answer to OSHA was one-sided. Benefis' lawyer offered Ms. Butterfly $2000 to settle. Rose did not accept the offer because she still believed she was discriminated and retaliated against.

56. On January 25, /2018. Benefis' answer to the EEOC was almost the same one that they sent

10

to OSHA, it was a duplicate almost word for word, even though they dealt with different issues.

57. On February 6/2016 through January25, 2018, Rose's complaints, via OSHA and EEOC, to Benefis were once again ignored and not investigated. Benefis' answer's (position statements) to plaintiff's harassment/grievance complaints was to dismiss the complaints and deny they ever happened. Rose was never offered help once during this complaint process as the defendants contend several times in their position statement that the defendants helps not hinders their employees. The defendants offered no resolution, nor did they discuss the plaintiff's concerns with her.

58. Plaintiff's 2nd EEOC Charge and "Right to Sue" letter: Retaliation based on the investigation, basis of the plaintiff's case, that the defendants are once again retaliating against the plaintiff's for using their worker rights to complain (On-going harassment and hostile work environment).

## VENUE

Venue is proper in this district as all actions by the defendant's occurred within the District of Montana. Plaintiff's and defendant's employment records are maintained by Benefis Health System (Benefis) in the Great Fall Federal Judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## JURISDICTION

59. This Court has jurisdiction over the subject matter of this civil action pursuant to

28 U.S.C. § 1331 ("federal question"), 42 U.S.C. §2000e-2, 42 U.S.C. 2000e-3, 42 U.S.C. 1981, and 42 U.S.C. §12117 (a). Rose Marie Butterfly [Rose] brought this case under the Civil Rights Act of 1964[42 U.S.C. §2000e-2 et. seq.], the Americans with Disabilities Act [ADA] 42U.S.C. §§12101 et. seq., Retaliation and Hostile Work Environment 42 U.S.C.1981, and Violation of the Rehabilitation Act of 1973, 29 U.S.C. §710 et. seq. The District Court has jurisdiction under 28 U.S.C. §1331, 42 U.S.C. §2000e-2, 42U.S.C. 2000e-3, 42 U.S.C. 1981, and 42 U.S.C. §12117(a).

## PARTIES

### Plaintiffs (Plaintiffs)

60. Plaintiff 1, Rose Marie Butterfly (Rose), now a 67-year-old, Native American woman, an enrolled member of the Blackfeet Tribe located in Browning, MT. Rose lives in Great Falls, MT and that is where she was residing when she was employed by the defendant, Benefis.

61. Plaintiff 2, Joy Lynn Valles (Joy), a 65-year-old, Native American women, an enrolled member of the Blackfeet Tribe located in Browning, MT. Joy lives in Great Falls, MT and that is where she was residing when she was employed by the defendant, Benefis.

### Defendants (Defendants)

Defendants meet the requirements to be sued under the following statutes: Title VII of the Civil Rights Act of 1964, as amended, Title I of the Americans with Disabilities Act and The Civil Rights Act of 1866," 42 U.S.C. § 1981, and 1981a.

12

62. Defendant 1, Plaintiff's ex-employer, Benefis Health System Corporation (Benefis) has 3500+ employees and is a company duly incorporated according to law and capable of being sued in its own name. Benefis had the power to make personnel decisions regarding plaintiff's employment.

63. Defendant 2, Kathie Bowing Avis (Kathie) is being sued both officially and individually in her capacity as an ex-corporate officer of the Benefis corporation, Chief Administrative Officer (CEO) and as the ex-manager of the Native American Programs (NAP) and supervisor of the plaintiff(s). Kathie had the power to make personnel decisions regarding plaintiff's employment.

64. Defendant 3, Pamelia Blackwell (Pam) is being sued both officially in her position as the manager of human resources (HR) and individually. Pamelia had the power to make personnel decisions regarding plaintiff's employment.

65. Defendant 4, Casey Buckingham (Casey) is being sued both officially as a member of the Board of Directors for Benefis and the Vice-President of Benefis HR. Casey is also being sued individually. Casey had the power to make personnel decisions regarding plaintiff's employment.

66. Defendant 5, Lisa Watson Whitford (Lisa) is being sued both officially as the plaintiff's ex-co-worker and supervisor of Benefis (NAP) Native American Welcoming Center (NAWC). Lisa is also being sued individually. Lisa had the power to make personnel decisions regarding Joy's employment.

## COUNT ONE

### DISCRIIMINATION IN VIOLATION OF 42 U.S.C. §2000e-2, et. seq..

67. The foregoing paragraphs are all realleged and incorporated by reference herein.

68. The Defendant's conduct as alleged herein constitutes discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended*; Section 703 of Title VII, 42 U.S.C. § 2000e-2 (1) (2), 2000e-3 (a);

69. Examples of such conduct described above include discriminatory practices in hiring, promotion, wages, benefits, work assignments, performance evaluations, training, transfer, leave, discipline, discharge, and any other term, condition, or privilege of employment are violations of the foregoing statutes because of their race.

70. Defendants' practice of using discriminatory fraudulent contracts to hire IC's was neither manifestly job-related nor consistent with business necessity is another example of the Defendant's discriminatory conduct. Less discriminatory alternatives existed to achieve Defendants' stated business purposes.

71. Plaintiffs damages include but are not limited to lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering, and emotional distress.

## COUNT TWO

## RETALIATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C.1981

72. The foregoing paragraphs are all realleged and incorporated by reference herein.

73. The Defendants conduct constitutes discrimination and retaliation in violation of 42 U.S. Code § 1981 and 1981a that prohibits employment practices that discrimination and retaliation against persons based on their race.

74. The examples of retaliation include from the above averments of fact, but are not limited to harassment, failure to investigate claims, endangering employee safety through retention of other employees with known violent dispositions, denying the Plaintiff's wages and benefits as employees, denying reasonable accommodations and discriminatory termination in retaliation for exercise of Plaintiff's civil rights.

75. Defendant's racial statements and animosity played a role in the formation of a hostile work environment that greatly affected the plaintiff's daily lives.

76. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on race.

77. Plaintiffs damages include but are not limited to lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering, and emotional distress.

## COUNT THREE

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT [ADA] 42U.S.C. §§12101 ET. SEQ.**

78. The foregoing paragraphs are all realleged and incorporated by reference herein

79. The Plaintiffs were discriminatorily terminated based on illness and disability that the Plaintiff's suffered due to discrimination and retaliation for exercise of their civil rights as described in the foregoing paragraphs. These actions constituted violations of the Americans with Disabilities Act (ADA)

80. Plaintiffs damages include but are not limited to lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering, and emotional distress, physical injury and mental injury.

## COUNT FOUR

## VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. §710 ET. SEQ

81. The foregoing paragraphs are all realleged and incorporated by reference herein.

82. The Plaintiffs were discriminatorily treated regarding illness and disability that the Plaintiff's suffered due to discrimination and retaliation for exercise of their civil rights as described in the foregoing paragraphs. The Defendant actions constituted violations of the Rehabilitation Act of 1973.

83. Plaintiffs damages include but are not limited to lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering, and emotional distress.

## COUNT FIVE

## EMOTIONAL DISTRESS

84. The foregoing paragraphs are all realleged and incorporated by reference herein

85. The Defendants caused the Plaintiff's emotional distress by their negligent and

emotional actions. The Defendant's had a duty to not inflict the emotional distress identified in this matter. The Defendants breached that duty. The Defendants breach of the duty was the cause of the Plaintiff's physical and emotional harm

86. Plaintiffs damages include but are not limited to lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering,

WHEREFORE, the Plaintiffs respectfully requests a findings after jury trial that the Defendants have violated Title VII, 42 U.S.C. §2000e-2 et. seq.; Retaliation and Hostile Work Environment in violation of 42 U.S.C. 1981; Violation of the Americans with Disabilities Act [ADA] 42U.S.C. §§12101 et. seq.; and Violation of the Rehabilitation Act of 1973, 29 U.S.C. §710 et. seq. and award the Plaintiff's damages as follows.

A. Violation of Title VII 42 U.S.C. §2000e-2 et. seq. - $300.000.00 to each Defendant plus damages for economic losses including lost earnings, benefits, as well ensuing medical conditions and related costs, pain and suffering, and emotional distress to be determined at trial. In addition the Plaintiffs seek punitive and exemplary damages for the malicious, intentional infliction of the discriminatory harm as well as attorney's fees and costs;

B. Retaliation and Hostile Work Environment in violation of 42 U.S.C. 1981 – Damages to be determined at trial for lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering, and emotional distress as well as punitive and exemplary damages for the malicious, intentional

infliction of the discriminatory harm as well as attorney's fees and costs;

C. Violation of the Americans with Disabilities Act [ADA] 42U.S.C. §§12101 et. seq. - Defendant plus damages for economic losses including lost earnings, benefits, as well ensuing medical conditions and related costs, pain and suffering, and emotional distress to be determined at trial. In addition the Plaintiffs seek punitive and exemplary damages for the malicious, intentional infliction of the discriminatory harm as well as attorney's fees and costs;

D. Violation of the Rehabilitation Act of 1973, 29 U.S.C. §710 et. seq. – Damages to be determined at trial for lost earnings, benefits, ensuing medical conditions and related costs, pain and suffering, and emotional distress as well as punitive and exemplary damages for the malicious, intentional infliction of the discriminatory harm as well as attorney's fees and costs;

E. An award for damages for emotional distress to be determined at trial.

Respectfully submitted this 6th day of July, 2022

_____
Michael Klinkhammer
Attorney for Plaintiffs

## VERIFICATION

I understand the submission of a false statement or answer to any question in this complaint may subject me to penalties for perjury. I declare under penalty of perjury that I am the Plaintiff in this action, I have read this complaint, and the information I set forth herein is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at Great Falls Montana on July 6, 2022.

/s/ Rose M. Butterfly
Rose M Butterfly, Plaintiff

Executed at Great Falls Montana on July 6, 2022.

/s/ Joy Valles
Joy Valles, Plaintiff

CERTIFICATE OF SERVICE

I, Michael Klinkhammer, the undersigned certify that on the 6th day of July, 2022, the above captioned THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL was emailed and mailed to the following persons at the following addresses:

David M. McLean
Ryan C. Willmore
McLEAN & ASSOCIATES, PLLC
3301 Great Northern Ave., Suite 203
Missoula, Montana 59808
dave@mcleanlawmt.com
ryan@mcleanlawmt.com

Michael Klinkhammer