IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ROSE MARIE BUTTERFLY,<br><br>        Plaintiff,<br><br>vs.<br><br>BENEFIS HEALTH SYSTEM, KATHIE AVIS, PAMELA BLACKWELL, CASEY BUCKINGHAM, and LISA WATSON-WHITFORD,<br><br>        Defendants. | No. CV-18-96-GF-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiff Rose Marie Butterfly ("Butterfly") brought this employment discrimination case against her former employer, Benefis Health System ("Benefis"), and five former colleagues, Kathie Avis, Pamalia Blackwell, Casey Buckingham, and Lisa Watson-Whitford (collectively "Benefis Defendants"). (Doc. 2.) Butterfly's Third Amended Complaint raised the following claims: (I) Discrimination, in violation of 42 U.S.C. § 2000e-2, et seq.; (II) Retaliation and Hostile Work Environment, in violation of 42 U.S.C. § 1981; (III) Violation of the

1

Americans with Disabilities Act ("ADA"); (IV) Violation of the Rehabilitation Act; and (V) Emotional Distress. (Doc. 58 at 13–17.)

The Court granted summary judgment to Benefis Defendants on Counts II, IV, and V. (Doc. 112 at 13.) The Court denied summary judgment on Butterfly's Title VII and ADA claims to the extent that these claims reflect alleged violations raised in Butterfly's first EEOC complaint. (*Id.*) The Court granted summary judgment on Butterfly's Title VII and ADA claims to the extent those claims related to conduct that Butterfly challenged in her second EEOC complaint. (*Id.*) Butterfly has moved the Court to reconsider these rulings. (Doc. 132.)

## BACKGROUND

Butterfly began working for Benefis in November 2009. (Doc. 58 at 3.) Butterfly spent approximately two months as an independent contractor assigned to a cancer survey project. (*Id.*) Butterfly also contends that she worked in the Native American Welcoming Center during this time. (Doc. 132 at 3; Doc. 84-1 at 2.) Butterfly applied to and was accepted for an employee position as a Native American Advocate on January 18, 2010. (*Id.* at 4; Doc. 97 at 6.)

Butterfly began intermittent Family Medical Leave Act ("FMLA") sick leave on March 9, 2015. (Doc. 97 at 6.) Butterfly worked her last shift at Benefis on March 6, 2015. (*Id.*) Butterfly's FMLA leave expired on May 1, 2015. (*Id.*) Benefis advised Butterfly that she could take an additional 42 days of personal leave but that once

that leave expired, her employment would no longer be guaranteed. (*Id.* at 7.) Butterfly's personal leave expired by June 12, 2015. (*Id.*) Butterfly had not returned to work by that point and was placed on registry status. (*Id.*) Benefis terminated Butterfly's employment on January 29, 2016. (Doc. 84-3.) Butterfly alleges that she received her termination letter on February 6, 2016. (Doc. 97 at 9.)

The parties disagree about when Butterfly filed her first Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination. Benefis Defendants contend that Butterfly filed her first EEOC complaint on February 4, 2017. (Doc. 84-2 at 2.) Butterfly initially agreed with this date. (*Id.*) Butterfly has since argued that she filed her first EEOC complaint on November 27, 2016. (Doc. 97 at 9.) Benefis submitted a Position Statement in response to Butterfly's first EEOC statement on April 7, 2017. (Doc. 84-5.) Butterfly undisputedly filed her second EEOC complaint on November 21, 2018. (Doc. 84-6; Doc. 97 at 10.)

Butterfly filed this suit on July 6, 2018. (Doc. 2.) The Court adopted the recommendations of U.S. Magistrate Judge Johnston to dismiss Butterfly's second amended complaint on the basis that her claims were time-barred or preempted by Montana's Wrongful Discharge from Employment Act ("WDEA"). (Doc 37 at 2–3.) Butterfly appealed. (Doc. 42.) The Ninth Circuit vacated the Court's judgment and remanded for the Court to consider whether Butterfly's claims fell within the 300-day period for filing an EEOC charge of discrimination and whether Butterfly's

3

claims under 42 U.S.C. § 1981 proved timely based on a four-year statute of limitations. (Doc. 46 at 2–3.) Butterfly amended her complaint after this decision. (Doc. 58.) The Court granted summary judgment on three of Butterfly's claims and granted summary judgment on the other two counts to the extent that those claims relate to allegations set forth in her second EEOC complaint. (Doc. 112 at 13.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

Butterfly asks the Court to reconsider its order granting summary judgment to Benefis Defendants on several counts. Butterfly argues that the Court failed to follow the Ninth Circuit mandate but fails to explain that grounds for that assertion. (Doc. 132 at 5.) Butterfly also makes the following arguments: (1) Section 1981 of Title 42 of the United States Code supports her claims even if they prove untimely under Title VII; (2) her second EEOC complaint proved timely; (3) the "16 dismissed claims under the 180-day law are not dismissed under Section 1981 or the

ADA;" (4) a claim under § 1981 does not require a contractual relationship to survive; and (5) her emotional distress claims prove distinct from any wrongful discharge claim. (*Id.* at 6–13.) The Court addresses these arguments in turn. The Court also recognizes Butterfly's withdrawal of her claim under the Rehabilitation Act of 1973. (Doc. 132 at 11.)

### A. Whether 42 U.S.C. § 1981 supports Butterfly's claims even if those claims prove untimely under Title VII.

Butterfly appears to confuse the Court's granting of partial summary judgment on her Title VII claims and the Court's granting of summary judgment on her § 1981 claims. The Court did not grant summary judgment on Butterfly's § 1981 claim on the ground that Butterfly failed to timely file an EEOC charge of discrimination. The Court granted summary judgment on the ground that Butterfly failed to establish any interference with the making or entering of contracts and failed to demonstrate that her suit fell within the four-year statute of limitations for § 1981 claims. (Doc. 112 at 10.) The Court will analyze further the propriety of that decision below. Butterfly conflates, however, two distinct claims and the Court's separate and distinct grounds for granting summary judgment on those claims. The Court rejects this argument as grounds for altering the Court's July 28, 2023 order.

### B. Whether Butterfly's second EEOC complaint proved timely.

Title VII prohibits employment discrimination, including discrimination based on race, national origin, and disability. Title VII's exhaustion requirement

mandates that a plaintiff file a Charge of Discrimination with the EEOC before bringing a Title VII claim in federal court. A complainant typically must file their administrative charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. 2000e-5(e)(1); *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 585 (9th Cir. 2000). Title VII extends the deadline to 300 days if a plaintiff files their charge with a state agency that enforces its own anti-discrimination laws. *Dinuba Med. Clinic*, 222 F.3d at 585.

The Court's July 28, 2023 order determined that Butterfly failed to timely file her second EEOC Charge of Discrimination. (Doc. 112 at 9.) It remains undisputed that Butterfly filed her second EEOC complaint on November 21, 2018. (Doc. 97 at 10.) Applying the more generous 300-day limitations period, January 25, 2018 represented the latest possible date of conduct that Butterfly could have challenged in this complaint. Butterfly's second EEOC complaint cites retaliation as the grounds for that charge of discrimination but fails to allege any particular event. (Doc. 84-6.) Butterfly contends that the retaliatory conduct occurred on January 25, 2018, when she received Benefis's position statement regarding her first EEOC complaint.

Butterfly contends that the time for filing her charge of discrimination with the EEOC only began to run once she discovered the alleged retaliatory conduct. (Doc. 132 at 7 (citing *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1049–50 (9th Cir. 2008).) Butterfly's claim fails even if the Court were to accept

6

Butterfly's claim that the discovery rule applies. A retaliation claim requires a claimant to demonstrate the following three elements: "(1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). Benefis Defendants correctly note that responding to the EEOC's inquiry regarding a charge of discrimination does not constitute an "unlawful employment practice" or "adverse employment action." (Doc. 98 at 7–9.)

Other district courts have rejected arguments like Butterfly's that the employer's written response to an EEOC complaint gave rise to a claim for retaliation. These courts have noted failures by the claimant to show "how the EEOC position statement had a materially adverse impact on the terms and conditions of [their] employment." *Zheng v. GE*, 1:15-CV-1232 (TJM/CFH), 2016 U.S. Dist. LEXIS 4307, at *32 (N.D.N.Y. Jan. 12, 2016). Courts have further noted that a position statement represents an ordinary step in the EEOC process in which an employee would expect the employer to make competing factual allegations. *Paugh v. Lockheed Martin Corp.*, 474 F. Supp. 3d 861, 866 (W.D. Tex. 2020).

Butterfly has failed to explain how Benefis's action in providing a position statement to the EEOC regarding Butterfly's first EEOC complaint affected the

7

terms or conditions of her employment or would "dissuade a reasonable employee from making or supporting a charge of discrimination." *Zheng*, 2016 U.S. Dist. LEXIS 4307, at *32. Benefis Defendants correctly note that Butterfly was not an employee of Benefis at the time she received the position statement and had not been an employee for nearly three years at that point. (Doc. 98 at 8.) Thus, Butterfly has failed to establish that Benefis's response to her first EEOC charge constituted an adverse employment action or unlawful employment practice to support a charge of retaliation or discrimination.

Butterfly's retaliation claim under the ADA similarly fails. A claim for retaliation under the ADA requires a showing of the following three elements: (1) that the claimant engaged in protected activity; (2) that the claimant suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). An adverse action means "any action 'reasonably likely to deter employees from engaging in protected activity.'" *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 850 (9th Cir. 2004) (quoting *Ray v. Henderson*, 217 F.3d 1234m 1243 (9th Cir. 2000)). Butterfly again has failed to establish that she experienced any adverse action in relation to her second EEOC complaint. Butterfly generally alleges experiencing extreme stress and hurt when reading Benefis's position statement responding to her first EEOC complaint. (Doc. 132 at 7.) Butterfly has failed to

demonstrate, however, that her receipt of Benefis's position statement nearly three years after Butterfly's employment already had been terminated constituted an adverse action.

Butterfly's motion for reconsideration failed to address any of the concerns raised by Benefis Defendants' reply brief regarding whether the position statement could constitute retaliatory conduct even accepting Butterfly's timeline. The Court finds that even if the Court were to accept Butterfly's argument regarding the timeliness of her EEOC charge, Benefis Defendants are entitled to judgment as a matter of law. The Court finds no grounds to disturb its prior grant of summary judgment on Butterfly's Title VII and ADA claims to the extent those claims relate to allegations set forth in her second EEOC complaint.

### C. Whether Butterfly's "16 dismissed claims under the 180-day law are [ ] dismissed under Section 1981 or the ADA."

Butterfly contends that sixteen of her claims survive because even if the claims were dismissed for lack of exhaustion under Title VII, those claims can be brought under 42 U.S.C. § 1981 and the ADA. (Doc. 132 at 8.) The Court remains uncertain but believes that Butterfly may be referring to the sixteen causes of action set forth in her first amended complaint filed on July 27, 2018. (Doc. 5.) The Court notes, however, that Butterfly filed a third amended complaint on July 6, 2022, that contained five causes of action. (Doc. 58.)

"[A]n 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" *Ramirez v. County of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997)). "[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 790 (9th Cir. 2013) (internal quotation omitted). Accordingly, Butterfly waived all causes of action set forth in her earlier complaints when she failed to assert them in her third amended complaint. The Court rejects Butterfly's attempts to revive these waived claims.

### D. Whether a claim under § 1981 requires a contractual relationship.

Butterfly contends that claims under § 1981 do not require a contractual relationship. Section 1981 prohibits race-based discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981. The U.S. Supreme Court has recognized that § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975). "[T]he Ninth Circuit has not ruled whether an at-will employment arrangement constitutes a contractual relationship" upon which a § 1981 claim may be brought. *McAllister v. Adecco Group N.A.*, CIV. NO. 16-00447 JMS-KJM, 2017 U.S. Dist. LEXIS 230612, at *6 n.3 (D. Haw. Feb. 9, 2017). Other district courts in the Ninth Circuit have looked to other circuits and determined that "[a]t-will

employment can serve as the predicate contract for a discrimination claim under Section 1981." *Mendoza v. Kindred Healthcare Operating, Inc.*, Case No.: 11-cv-00666-YGR, 2012 U.S. Dist. LEXIS 78072, at *44–45 (N.D. Cal. June 5, 2012) (citing *Skinner v. Maritz, Inc.*, 253 F.3d 337, 340 (8th Cir. 2001); *Lauture v. Int'l Business Machines Corp.*, 216 F.3d 258, 262–63 (2d Cir. 2000)).

The Court agrees with its fellow district courts on this issue. The Court will alter its prior ruling that Butterfly failed to establish a contractual relationship with Benefis. Butterfly worked for Benefis as an independent contractor from November of 2009 until January of 2010. Butterfly then apparently began working as an at-will employee for Benefis in January of 2010. Butterfly continued this relationship with Benefis until at least January 29, 2016, when Benefis apparently terminated her employment.

Benefis Defendants contend that even if Butterfly's § 1981 claim did not require an employment contract, her complaints regarding race-based discrimination prove untimely. (Doc. 83 at 12.) The parties appear to agree that the racially discriminatory remarks allegedly made by Ms. Watson-Whitford and agreed to by Kathie Avis occurred in 2010 and 2012. A claim under § 1981 carries a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–84 (2004) (citing 28 U.S.C. § 1658(a)). Butterfly filed suit on July 6, 2018, at least six

years after the statements made by Ms. Watson-Whitford. Thus, those statements cannot support Butterfly's § 1981 claim.

The Court recognizes that Butterfly also vaguely alleges the following discriminatory conduct: (1) Defendant Kathie Avis refused to call Butterfly in for registry shifts and terminated her employment because of racial animus (Doc. 84-4 at 1; Doc. 84-1 at 9); and (2) Benefis Defendants hired Native Americans only as independent contractors to systematically pay them less and offer them fewer benefits. (Doc. 96 at 8.) Butterfly served as an independent contractor in 2010, over eight years before filing suit. This conduct also cannot support her § 1981 claim.

The alleged refusal to call Butterfly in for registry shifts and the termination of her employment fall within the statute of limitations. Benefis Defendants did not challenge the merits of a § 1981 claim based upon these events. Benefis Defendants' sole challenges to timeliness and the existence of a contractual relationship fail. Butterfly's § 1981 claim proves timely when measured from her termination and her time as a registry employee. The Court will grant Butterfly's motion for reconsideration on her § 1981 claim and reinstate this claim. The Court will reserve ruling on the merits of such claim until further motion by the parties.

### E. Whether Butterfly's emotional distress claims prove distinct from any wrongful discharge claim.

The Court previously dismissed Butterfly's claim for infliction of emotional distress upon a finding that the claim was preempted by the WDEA and untimely

pursuant to the 1-year statute of limitations for WDEA claims. (Doc. 12 at 3.) Butterfly filed her second amended complaint after this ruling and failed to reassert a claim for infliction of emotional distress. (Doc. 16 at 13–18.) The Court dismissed the claims in Butterfly's second amended complaint for lack of jurisdiction. Butterfly appealed this ruling but failed to appeal any ruling on her emotional distress claim. (Doc. 46 at 4.)

Butterfly reasserted a claim for infliction of emotional distress in her third amended complaint. (Doc. 58 at 16–17.) The Court granted Benefis summary judgment on Butterfly's emotional distress claim upon a finding that Butterfly failed to appeal the prior dismissal of that claim. (Doc. 112 at 12.) Butterfly urges the Court to reconsider this ruling and argues that her emotional distress claim proves separate and distinct from any claim for wrongful discharge.

The Montana WDEA provides the exclusive remedy for wrongful discharge from employment but "does not bar all tort or contract claims arising in the employment context." *Kulm v. Montana State University-Bozeman*, 948 P.2d 243, 245 (Mont. 1997). Instead, the WDEA preempts claims for emotional distress that prove inextricably intertwined with and based on a claimant's discharge. *Id.* at 246. Butterfly argues that her claim for emotional distress is brought under other statutes but fails to explain the basis for the claim.

13

Even if Butterfly's claim for emotional distress constitutes a standalone claim, Butterfly's claim fails as a matter of law. The Montana Supreme Court has determined that "an independent cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." *Sacco v. High Country Indep. Press*, 896 P.2d 411, 426 (Mont. 1995). A cause of action for intentional infliction of emotional distress likewise lies where "serious or severe emotional distress was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Id.* at 428. Serious or severe emotional distress requires the distress to be "so severe that no reasonable [person] could be expected to endure it." *Id.* at 426.

Butterfly argues that she suffered severe stress and hurt when reading Benefis's position statement responding to Butterfly's EEOC claim. (Doc. 84-1 at 11; Doc. 132 at 7.) "[D]istress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress." *Sacco*, 896 P.2d 411, 426. Butterfly has failed to present evidence of emotional distress that proves so severe that no person could be expected to endure it. Butterfly has further failed to present evidence that the emotional distress she suffered constituted a reasonably foreseeable consequence of Benefis's actions. It is not reasonably foreseeable that reading an employer's

14

position statement regarding a charge of discrimination would cause severe emotional distress to an employee. A position statement represents an ordinary step in the EEOC process in which an employee would expect to the employer to make competing factual allegations. *Paugh*, 474 F. Supp. 3d at 866. The Court will not alter its grant of summary judgment on Butterfly's emotional distress claim.

## CONCLUSION

The Court will grant, in part, and deny, in part, Butterfly's motion for reconsideration. (Doc. 132.) The Court will deny Butterfly's motion to reconsider the Court's grant of summary judgment on Butterfly's Title VII and ADA claims (Counts I and III) to the extent these claims pertained to any conduct that Butterfly challenged in her second EEOC complaint. The Court will deny Butterfly's motion to reconsider the Court's prior grant of summary judgment to Benefis on Counts IV and V. The Court will grant Butterfly's motion to reconsider the grant of summary judgment to Benefis on Count II. Butterfly's § 1981 claim proves timely when measured from her termination and her time as a registry employee. The Court will reserve ruling on the merits of such claim until further motion by the parties.

## ORDER

**IT IS HEREBY ORDERED** that Butterfly's Motion for Reconsideration is **GRANTED, in part, and DENIED, in part,** as follows:

1. The Court **AFFIRMS** its grant of summary judgment in favor of Benefis Defendants as to Counts IV and V of the Third Amended Complaint.

2. The Court **AFFIRMS** its grant of summary judgment for Counts I and III as to Butterfly's Title VII and ADA claims relating to her **second** EEOC Charge of Discrimination.

3. The Court **REVERSES** its grant of summary judgment for Count II as to Butterfly's § 1981 claim to the extent that claim relates to Butterfly's time as a registry employee or Butterfly's termination.

DATED this 23rd day of January, 2024.

_____
Brian Morris, Chief District Judge
United States District Court